JOSHUA S. GOODMAN, ESQ. - State Bar #116576
RUTA PASKEVICIUS, ESQ. - State Bar #127784
GOODMAN NEUMAN & HAMILTON LLP
417 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 705-0400
Facsimile: (415) 705-0411

Attorneys for Plaintiff THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a Public Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, a Non-Profit Corporation<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR**<br><br>**1. Breach of Contract**<br>**2. Account Stated**<br>**3. Open Book Account**<br><br>**Jury Trial Demanded** |

## PARTIES

1. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a Public Corporation, (hereinafter "UC" or "Plaintiff"), alleges as follows:

2. THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, a Non-Profit Corporation, (hereinafter "U. PENN." or "Defendant) is incorporated in the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. UC is informed and believes and thereon alleges that at all times relevant to this pleading, U. PENN was doing business in the State of California.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because the plaintiff is a citizen of California, as it is incorporated in and has

Goodman
Neuman
Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

its principal place of business in California and the defendant is a citizen of Pennsylvania, as it is incorporated in Pennsylvania and has its principal place of business in California, and the amount in controversy exceeds $75,000.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) as this Court has personal jurisdiction over Defendant both because Defendant resides in this judicial district in California for venue purposes and because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district in California.

## GENERAL ALLEGATIONS

5. On or about June 30, 2014 UC and U. PENN entered into a Research Subaward Agreement pursuant to which UC was to provide U. PENN with genetics research and genetic analysis of blood samples as part of a project entitled Primary Open Angle African-American Glaucoma Genetics (POAAGG) funded by the National Eye Institute. A copy of this Research Subaward Agreement is attached as Exhibit A.

6. The primary work UC agreed to perform under the Research Subaward Agreement was the purchase of arrays to perform genotyping and genetic analysis of blood samples provided by U. PENN and by others and the genotyping and genetic analysis of those samples.

7. Between April and October of 2014, UC researchers involved in this project investigated the purchase of arrays from two different companies, Illumina and Affymetrix. With the full prior knowledge of the researchers on this project at U. PENN, UC purchased 4,000 Affymetrix Axiom AFR arrays in November of 2014. The Affymetrix arrays were selected for three principal reasons. First, using Illumina arrays would require using two arrays for coverage comparable to one Affymetrix array. Second, the price of the Affymetrix arrays was significantly lower than the price of the Illumina arrays such that the purchase of the Affymetrix arrays would allow for the genotyping of the full cohort of subjects from U. PENN, whereas the cost of the Illumina arrays would have precluded genotyping of all of the samples, based on budget limitations in the Subaward Agreement. Third, the study design called for pooling

Goodman
Neuman
Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

genotype data from U. PENN and those previously obtained in the Kaiser GERA cohort, which were genotyped on the Affymetrix array. Using a different set of arrays for the U. PENN data would cause significant problems for pooling of data, as described in the study design.

8. In addition to all these reasons, the Affymetrix arrays were specifically called for in the study design and in the Research Subaward Agreement. The grant application dated October 4, 2012 submitted by U. PENN to the National Eye Institute set forth under **"Specific Aims"** as follows:

> We will genotype subjects in the discovery cohorts **using the Affymetrix Axiom AFR array and Affymetrix Exome array**, providing harmonized genotype data, and validate findings from genetic analyses in the validation cohort using custom genotyping arrays and targeted sequencing.
>
> **The Affymetrix Axiom AFR array and Affymetrix Exome array will be used** to genotype SNPs for the GWAS, EWAS, and admixture analyses. UPenn samples **will be genotyped on the AFR array** (described below), and GERA cohort **members have already been genotyped on this platform**.

(Emphasis added.) The Research Subaward Agreement also specifically refers to the genotyping of data being performed on the Affymetrix arrays. Under SCOPE OF WORK - The UCSF Research Team, the Research Subaward Agreement states that Mark Kyale, Ph.D. "will perform the genotyping of **data from the Affymetrix Gene Titans** and oversee QC analyses." Under that same section, the Research Subaward Agreement states further that Brandon Zerbe, Ph.D. "will assist Dr. Kvale in creating and managing and QC of the genotyping **derived from the Affymetrix data**." (Emphasis added.)

9. In fact, had U. PENN desired to change technologies and use arrays from Illumina rather than the Affymetrix arrays, the National Institutes of Health Grant Policy (which governed this grant award) would have required U. PENN to request a change in scope due to a change in technology from the National Eye Institute. U. PENN did not request that change in scope during the first year of the grant award, which is the year that gives rise to UC's claims against U. PENN.

10. Despite the fact that the Grant Application specifically and repeatedly called for the Affymetrix arrays to be used in this study and was strongly supported by

Goodman
Neuman
Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

the grant reviewers in their summary statement, and despite the fact that no provision of the Research Subaward Agreement required prior approval by U. PENN of expenditures for the purchase of these arrays, the decision to purchase the Affymetrix arrays was discussed with the U. PENN researchers beginning in September of 2014. In addition, on November 11, 2009, U. PENN was advised by email that UC would be purchasing the arrays so that UC would have them in time to begin genotyping in January. The U. PENN researchers responded: "That's great news." The U.PENN researchers also commented on the reduced price UC was able to negotiate for the Affymetrix arrays writing: "$65 per array is a great price." UC had negotiated the price of these arrays down from $114 per array to $65 per array and that allowed for the purchase of more arrays and the genotyping and genetic analysis of many more blood samples, all of which significantly benefited the study and U. PENN.

11. UC purchased 4,000 Affymetrix arrays in November of 2014 pursuant to the Research Subaward Agreement at a cost that was within the overall budget for the first year under the Research Subaward Agreement.

12. On or about January 26, 2015, UC sent U. PENN an invoice (attached as Exhibit B) in the amount of $336,391.91 reflecting the cost of the arrays and related expenses and work performed by UC as part of the Research Subaward Agreement. To date, despite repeated demands, this invoice remains unpaid.

13. UC submitted invoices to U. PENN under the Research Subaward Agreement totaling $483,752.08, which was within the "Amount Funded" in the Research Subaward Agreement of $486,624 as set forth on the first page of that Agreement (Exhibit A). U. PENN paid invoices totaling $147,360.17 but has refused to pay the January 26, 2014 invoice of $336,391.91 (Exhibit B).

14. UC is informed and believes and on that basis alleges that U. PENN misspent moneys under its grant award from the National Eye Institute, of which the Research Subaward Agreement was a part. The Final Financial Report for the first grant year submitted by U. PENN to the National Eye Institute stated that of the total funds

Goodman
Neuman
Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

authorized of $2,263,848.00, the amount spent was $2,101,945.22, leaving an unobligated balance of $161,902.78. As a result, U. PENN did not have sufficient funds remaining in the first year of the grant award to pay for the work it contracted with UC to perform under the Research Subaward Agreement.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

15. UC refers to paragraphs 1 through 14 above, and hereby incorporates these paragraphs as though fully set forth herein.

16. UC entered into a written contract with U. PENN called a Research Subaward Agreement (attached as Exhibit A). UC performed all obligations it had under this contract and made purchases and did work under this contract. UC sent an invoice to U. PENN pursuant to the Research Subaward Agreement and which U. PENN was obligated to pay under the Research Subaward Agreement.

17. Throughout the term of the Research Subaward Agreement UC fulfilled all of its obligations to U. PENN and incurred expenses and provided services for which U. PENN had agreed in the Research Subaward Agreement to pay.

18. U. PENN has breached its contractual obligations under the Research Subaward Agreement to pay for work performed and expenses incurred by UC pursuant to the Research Subaward Agreement. There is now due and owing from U. PENN the sum of $336,391.91, plus interest thereon.

WHEREFORE, UC prays for judgment as hereinafter set forth.

**SECOND CAUSE OF ACTION**
(Account Stated)

19. UC refers to paragraphs 1 through 18 above, and hereby incorporates these paragraphs as though fully set forth herein.

20. Within the last four (4) years, accounts were stated in writing by and between UC and U. PENN. On such statements of account, the balances reflected a total due of $336,391.91.

Goodman
Neuman
Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

21. No part of the above-referenced balance has been paid, although demand therefor has been made. There is now due, owing and unpaid from U. PENN to UC the sum of $336,391.91, plus interest thereon.

WHEREFORE, UC prays for judgment as hereinafter set forth.

**THIRD CAUSE OF ACTION**
(Open Book Account)

22. UC refers to paragraphs 1 through 21 above, and hereby incorporates these paragraphs as though fully set forth herein.

23. Within the last four (4) years, U. PENN became indebted to UC on an open book account for the balance due in the sum of $336,391.91, plus interest thereon.

**JURY DEMAND**

24. UC hereby demands a trial by jury.

**PRAYER**

WHEREFORE, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA prays for judgment as follows:

1. For the sum of $336,391.91, plus interest thereon.
2. For costs of suit incurred herein; and
3. For such other and further relief as the court may deem just and proper.

DATED: January 25, 2017

GOODMAN NEUMAN HAMILTON LLP

By: ______________________________

JOSHUA S. GOODMAN
Attorneys for Plaintiff THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Goodman Neuman Hamilton LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
Tel.: (415) 705-0400

# EXHIBIT A

 RIS DOC ID: 7437

November 2011 FDP

# Research Subaward Agreement

Penn Institution No. 10038926

| Institution/Organization ("Prime Recipient") | Institution/Organization ("Subrecipient") |
|---|---|
| Name: Trustees of the University of Pennsylvania | Name: Regents of the University of California |
| Prime Award No.: 1-R01-EY-023557-01 | Subaward No.: 563141 CFDA #: 93.867 |
| Awarding Agency: NATIONAL EYE INSTITUTE/NIH/DHHS | Amount Funded This Action: $486,624.00 Est. Total (if incrementally funded): |

Subaward Period of Performance:
Budget Period: From: Mar 1, 2014 To: Feb 28, 2015

Estimated Project Period (if incrementally funded):
From: To:

Project Title:
Primary Open Angle African-American Glaucoma Genetics (POAAGG)

Reporting Requirements (Check here if applicable: [X] See Attachment 4) [X] FFATA (Attachment 3B) [ ] ARRA Funds (Attachment 4A)

## Terms & Conditions

1) Prime Recipient hereby awards a cost reimbursable subaward, as described above, to Subrecipient. The statement of work and budget for this subaward are (check one): [ ] As specified in Subrecipient's proposal dated ; or [X] as shown in Attachment 5. In its performance of the subaward work, Subrecipient shall be an independent entity and not an employee or agent of Prime Recipient.

2) Prime Recipient Shall reimburse Subrecipient not more often than monthly for allowable costs. All invoices shall be submitted using Subrecipient's standard invoice, but at a minimum shall include current and cumulative costs (including cost sharing), subaward number, and certification as to truth and accuracy of invoice. *Invoices that do not reference Prime Recipient's Subaward Number shall be returned to Subrecipient.* Invoices and questions concerning invoice receipt or payments should be directed to the appropriate party's Financial Contact as shown in Attachments 3A & 3B.

3) A final statement of cumulative costs incurred, including cost sharing, marked "FINAL" must be submitted to Prime Recipient's Financial Contact, as shown in Attachments 3A and 3B, NOT LATER THAN sixty (60) days after subaward end date. The final statement of costs shall constitute Subrecipient's final financial report.

4) All payments shall be considered provisional and subject to adjustment within the total estimated cost in the event such adjustment is necessary as a result of an adverse audit finding against the Subrecipient.

5) Matters concerning the technical performance of this subaward should be directed to the appropriate party's Principal Investigator, as shown in Attachments 3A and 3B. Technical reports are required as shown above, "Reporting Requirements".

6) Matters concerning the request or negotiation of any changes in the terms, conditions, or amounts cited in this subaward agreement, and any changes requiring prior approval, should be directed to the appropriate party's Authorized Contact, as shown in Attachments 3A & 3B. Any such changes made to this subaward agreement require the written approval of each party's Authorized Official as shown in Attachments 3A & 3B.

7) Each party shall be responsible for its negligent acts or omissions and the negligent acts or omissions of its employees, officers, or director's, to the extent allowed by law.

8) Either party may terminate this subaward with thirty days written notice to the appropriate party's Authorized Contact as shown in Attachments 3A & 3B. Prime Recipient shall pay Subrecipient for termination costs as allowable under OMB Circular A-21 or A-122 or 45 CFR Part 74 Appendix E, "Principles for Determining Costs Applicable to Research and Development under Grants and Contracts with Hospitals" as applicable.

9) No-cost extensions require the approval of the Prime Recipient. Any requests for a no-cost extension should be addressed to and received by the Authorized Contact, as shown in Attachments 3A & 3B, not less than thirty (30) days prior to the desired effective date of the requested change.

10) The Subaward is subject to the terms and conditions of the Prime Award and other special terms and conditions, as identified in Attachment 2.

11) By signing below Subrecipient makes the certifications and assurances shown in Attachments 1 and 2. Subrecipient also assures that it will comply with applicable statutory and regulatory requirements specified in the Research Terms & Conditions Appendix C found at http://nsf.gov/bfa/dias/policy/rtc/appc_june11.pdf.

| By an Authorized Official of Prime Recipient | By an Authorized Official of Subrecipient |
|---|---|
| Sheila R. Atkins (signature) Date: 6/30/2014 | (signature) Date: 06/27/2014 |
| Sheila R. Atkins<br>Associate Director, Subawards | Catherine Chan, Contracts & Grants Officer |

# Attachment 1
# Research Subaward Agreement
# Certifications and Assurances

By signing the Subaward Agreement, the authorized official of Subrecipient certifies, to the best of his/her knowledge and belief that:

## Certification Regarding Lobbying

1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Subrecipient, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or intending to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Subrecipient shall complete and submit Standard Form -LLL, "Disclosure Form to Report Lobbying", to the Prime Recipient.

3) The Subrecipient shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

## Debarment, Suspension, and Other Responsibility Matters

Subrecipient certifies by signing this Subaward Agreement that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in this transaction by any federal department or agency.

## OMB Circular A-133 Assurance

Subrecipient assures Prime Recipient that it complies with A-133 and that it will notify Prime Recipient of completion of required audits and of any adverse findings which impact this subaward.

**Attachment 2**
**Research Subaward Agreement**
**Prime Award Terms and Conditions**
**NIH**

## Agency-Specific Certifications/Assurances

1. By signing this Research Subaward Agreement Subrecipient makes the certifications and assurances specified in the Research Terms and Conditions Appendix C found at http://www.nsf.gov/bfa/dias/policy/rtc/appc_june11.pdf

**General terms and conditions** as of the effective date of this Research Subaward Agreement**:**

1. Conditions on activities and restrictions on expenditure of federal funds in appropriations acts are applicable to this subaward to the extent those restrictions are pertinent. This includes any recent legislation noted on the NIH Award Conditions website: http://grants.nih.gov/grants/policy/awardconditions.htm
2. 45 CFR Part 74 or 45 CFR Part 92 as applicable.
3. The NIH Grants Policy Statement, including addenda in effect as of the beginning date of the period of performance.
4. Research Terms and Conditions found at < http://www.nsf.gov/pubs/policydocs/rtc/termsidebyside_june11.pdf > and Agency Specific Requirements found at http://www.nsf.gov/pubs/policydocs/rtc/nih_1210.pdf , except for the following:
   a. The right to initiate an automatic one-time extension of the end date provided by Article 25(c)(2) of the Research Terms and Conditions is replaced by the need to obtain prior written approval from the Prime Recipient;
   b. The payment mechanism described in Article 22 and the financial reporting requirements in Article 52 of the Research Terms and Conditions and Article 8 of the Agency-Specific Requirements are replaced with Terms and Conditions (1) through (4) of this Subaward Agreement; and
   c. Any prior approvals are to be sought from the Prime Recipient and not the Federal Awarding Agency.
5. Title to equipment costing $5,000 or more that is purchased or fabricated with research funds or Subrecipient cost sharing funds, as direct costs of the project or program, shall unconditionally vest in the Subrecipient upon acquisition without further obligation to the Federal Awarding Agency subject to the conditions specified in Article 34(a) of the Research Terms and Conditions.
6. Treatment of Program Income: ☒ Additive ☐ Other, Prime Recipient specify alternative from NIH Agreement

## NIH-Specific Requirements Promoting Objectivity in Research Applicable to Subrecipients (42 CFR Part 50 Subpart F)

a) 42 CFR Part 50. 604 requires that institutions conducting PHS-funded research "*Maintain an up-to-date, written, enforced policy on financial conflicts of interest.*" Further, "*If the Institution carries out the PHS-funded research through a subrecipient (e.g., subcontractors or consortium members), the Institution (awardee Institution) must take reasonable steps to ensure that any subrecipient Investigator complies with this subpart by incorporating as part of a written agreement with the subrecipient terms that establish whether the financial conflicts of interest policy of the awardee Institution or that of the subrecipient will apply to the subrecipient's Investigators.*"

***Subrecipient must designate herein, that the Subrecipients' institutional financial conflict of interest policy will apply and by execution of this Subaward Agreement, Subrecipient Institution also certifies that its policy complies with 42 CFR Part 50***

**b) Subrecipient shall report any financial conflict of interest on the attached Subrecipient FCOI Report to the University of Pennsylvania before expenditure of funds authorized in this Subrecipient Agreement, within 30 days of any subsequently identified financial conflict of interest, and on an annual basis.** Any financial conflicts of interest identified shall subsequently be reported to NIH.

***Special terms and conditions:***

1. ***Copyrights***
   ***Subrecipient shall grant to Prime Recipient an irrevocable, royalty-free, non-transferable, non-exclusive right and license to use, reproduce, make derivative works, display, and perform publicly any copyrights or copyrighted material (including any computer software and its documentation and/or databases) first developed and delivered under this Subaward Agreement solely for the purpose of and only to the extent required to meet Prime Recipient's obligations to the Federal Government under its Prime Award.***

2. ***Data Rights***
   ***Subrecipient grants to Prime Recipient the right to use data created in the performance of this Subaward Agreement solely for the purpose of and only to the extent required to meet Prime Recipient's obligations to the Federal Government under its Prime Award.***

3. ***Automatic Carry Forward:*** ☐ ***Yes*** ☒ ***No***
   ***(If No, Carry Forward requests must be sent to Prime Recipient's Principal Investigator, as shown in Attachment 3A).***

Notice of Award

*RESEARCH* **Issue Date:** 03/03/2014

Department of Health and Human Services
National Institutes of Health
NATIONAL EYE INSTITUTE

**Grant Number:** 1R01EY023557-01
**FAIN:** R01EY023557

**Principal Investigator(s):**
JOAN M O'BRIEN, MD

**Project Title:** Primary Open Angle African-American Glaucoma Genetics (POAAGG)

LEWIS, HEATHER G
Director, Pre-Award & Non-Financial Post-Awar
Office of Research Services
3451 Walnut Street, Suite P-221
PHILADELPHIA, PA 191046205

**Award e-mailed to:** rs-award@lists.upenn.edu

**Budget Period:** 03/01/2014 – 02/28/2015
**Project Period:** 03/01/2014 – 02/28/2019

Dear Business Official:

The National Institutes of Health hereby awards a grant in the amount of $2,263,848 (see “Award Calculation” in Section I and “Terms and Conditions” in Section III) to UNIVERSITY OF PENNSYLVANIA in support of the above referenced project. This award is pursuant to the authority of 42 USC 241 42 CFR 52 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the “Terms and Conditions” is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

Each publication, press release, or other document about research supported by an NIH award must include an acknowledgment of NIH award support and a disclaimer such as “Research reported in this publication was supported by the National Eye Institute of the National Institutes of Health under Award Number R01EY023557. The content is solely the responsibility of the authors and does not necessarily represent the official views of the National Institutes of Health.” Prior to issuing a press release concerning the outcome of this research, please notify the NIH awarding IC in advance to allow for coordination.

Award recipients must promote objectivity in research by establishing standards that provide a reasonable expectation that the design, conduct and reporting of research funded under NIH awards will be free from bias resulting from an Investigator’s Financial Conflict of Interest (FCOI), in accordance with 42 CFR Part 50 Subpart F. Subsequent to the compliance date of the 2011 revised FCOI regulation (i.e., on or before August 24, 2012), Awardees must be in compliance with all aspects of the 2011 revised regulation; until then, Awardees must comply with the 1995 regulation. The Institution shall submit all FCOI reports to the NIH through the eRA Commons FCOI Module. The regulation does not apply to Phase I Small Business Innovative Research (SBIR) and Small Business Technology Transfer (STTR) awards. Consult the NIH website http://grants.nih.gov/grants/policy/coi/ for a link to the regulation and additional important information.

If you have any questions about this award, please contact the individual(s) referenced in Section IV.

Sincerely yours,

WILLIAM W DARBY
Grants Management Officer
NATIONAL EYE INSTITUTE

Additional information follows

**SECTION I – AWARD DATA – 1R01EY023557-01**

**Award Calculation (U.S. Dollars)**

| | |
|---|---|
| **Salaries and Wages** | $478,637 |
| **Fringe Benefits** | $152,206 |
| **Equipment** | $25,510 |
| **Supplies** | $4,973 |
| **Travel Costs** | $8,000 |
| **Patient Care (Outpatient)** | $16,115 |
| **Other Costs** | $23,750 |
| **Consortium/Contractual Cost** | $1,094,117 |

| | |
|---|---|
| **Federal Direct Costs** | $1,803,308 |
| **Federal F&A Costs** | $460,540 |
| **Approved Budget** | $2,263,848 |
| **Federal Share** | $2,263,848 |
| **TOTAL FEDERAL AWARD AMOUNT** | $2,263,848 |
| | |
| **AMOUNT OF THIS ACTION (FEDERAL SHARE)** | $2,263,848 |

| SUMMARY TOTALS FOR ALL YEARS | | |
|---|---|---|
| **YR** | **THIS AWARD** | **CUMULATIVE TOTALS** |
| 1 | $2,263,848 | $2,263,848 |
| 2 | $2,258,411 | $2,258,411 |
| 3 | $2,229,479 | $2,229,479 |
| 4 | $2,236,175 | $2,236,175 |
| 5 | $2,236,959 | $2,236,959 |

Recommended future year total cost support, subject to the availability of funds and satisfactory progress of the project

**Fiscal Information:**

| | |
|---|---|
| **CFDA Number:** | 93.867 |
| **EIN:** | 1231352685A1 |
| **Document Number:** | REY023557A |
| **PMS Account Type:** | P (Subaccount) |
| **Fiscal Year:** | 2014 |

| IC | CAN | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| EY | 8472436 | $2,263,848 | $2,258,411 | $2,229,479 | $2,236,175 | $2,236,959 |

Recommended future year total cost support, subject to the availability of funds and satisfactory progress of the project

**NIH Administrative Data:**
**PCC**: 4F /NXA / **OC**: 414A / **Released**: WDARBY 02/25/2014
**Award Processed:** 12/26/2013 10:57:56 AM

**SECTION II – PAYMENT/HOTLINE INFORMATION – 1R01EY023557-01**

For payment and HHS Office of Inspector General Hotline information, see the NIH Home Page at http://grants.nih.gov/grants/policy/awardconditions.htm

**SECTION III – TERMS AND CONDITIONS – 1R01EY023557-01**

This award is based on the application submitted to, and as approved by, NIH on the above-titled project and is subject to the terms and conditions incorporated either directly or by reference in the following:

a. The grant program legislation and program regulation cited in this Notice of Award.
b. Conditions on activities and expenditure of funds in other statutory requirements, such as those included in appropriations acts.

c. 45 CFR Part 74 or 45 CFR Part 92 as applicable.
d. The NIH Grants Policy Statement, including addenda in effect as of the beginning date of the budget period.
e. This award notice, INCLUDING THE TERMS AND CONDITIONS CITED BELOW.

(See NIH Home Page at http://grants.nih.gov/grants/policy/awardconditions.htm for certain references cited above.)

This institution is a signatory to the Federal Demonstration Partnership (FDP) Phase V Agreement which requires active institutional participation in new or ongoing FDP demonstrations and pilots.

Carry over of an unobligated balance into the next budget period requires Grants Management Officer prior approval.

This award is subject to the requirements of 2 CFR Part 25 for institutions to receive a Dun & Bradstreet Universal Numbering System (DUNS) number and maintain an active registration in the Central Contractor Registration. Should a consortium/subaward be issued under this award, a DUNS requirement must be included. See http://grants.nih.gov/grants/policy/awardconditions.htm for the full NIH award term implementing this requirement and other additional information.

This award has been assigned the Federal Award Identification Number (FAIN) R01EY023557. Recipients must document the assigned FAIN on each consortium/subaward issued under this award.

Based on the project period start date of this project, this award is likely subject to the Transparency Act subaward and executive compensation reporting requirement of 2 CFR Part 170. There are conditions that may exclude this award; see http://grants.nih.gov/grants/policy/awardconditions.htm for additional award applicability information.

In accordance with P.L. 110-161, compliance with the NIH Public Access Policy is now mandatory. For more information, see NOT-OD-08-033 and the Public Access website: http://publicaccess.nih.gov/.

**Treatment of Program Income:**
Additional Costs

---

**SECTION IV – EY Special Terms and Conditions – 1R01EY023557-01**

**REVISED AIMS AND BUDGETS**
This award has been issued based on the revised statement of specific aims and budget submitted by the grantee institution on December 19, 2013 February 21, 2014 and approved by Program Official and Grants Management Specialist.

**PATIENT CARE COSTS**
Charges for research patient care costs must be made in accordance with rate agreement established with DHHS. Charges must be adjusted to costs before applying third party reimbursement.

**CONSORTIUM**
This award includes funds awarded for consortium activity with Kaiser Permanente in the amount of $406,428 ($282,670 direct costs + $123,758 facilities and administrative costs). Consortia are to be established and administered as described in the NIH Grants Policy Statement (NIH GPS). The referenced section of the NIH GPS is available at: http://grants.nih.gov/grants/policy/nihgps_2013/nihgps_ch15.htm#_Toc271265264.

**CONSORTIUM**
This award includes funds awarded for consortium activity with University of Illinois at Chicago in the amount of $103,149 ($64,670 direct costs + $38,479 facilities and administrative costs). Consortia are to be established and administered as described in the NIH Grants Policy Statement (NIH GPS). The referenced section of the NIH GPS is available at: http://grants.nih.gov/grants/policy/nihgps_2013/nihgps_ch15.htm#_Toc271265264.

**CONSORTIUM**
This award includes funds awarded for consortium activity with SStanford University in the amount of $97,916 ($61,007 direct costs + $36,909 facilities and administrative costs). Consortia are to be established and administered as described in the NIH Grants Policy Statement (NIH GPS). The referenced section of the NIH GPS is available at: http://grants.nih.gov/grants/policy/nihgps_2013/nihgps_ch15.htm#_Toc271265264.

**CONSORTIUM**
This award includes funds awarded for consortium activity with University of California, San Francisco in the amount of $486,624 ($306,641 direct costs + $177,983 facilities and administrative costs). Consortia are to be established and administered as described in the NIH Grants Policy Statement (NIH GPS). The referenced section of the NIH GPS is available at: http://grants.nih.gov/grants/policy/nihgps_2013/nihgps_ch15.htm#_Toc271265264.

**Human Subjects for Subcontract:**
It is the responsibility of the parent grantee University of Pennsylvania to assure that all pertinent subcontractors, and/or collaborators, etc. involved in this study have human subjects assurances, as well as IRB approval (s) at their local institutions for each protocol(s) involved. Human Subjects Education Certifications must also be obtained for all key personnel involved in the design and conduct of the study. No experiments involving human subjects may be conducted until such approvals are obtained.

**KEY PERSONNEL**:
In addition to the PI, any absence, replacement, or substantial reduction in effort of the following individual(s) below, requires the written prior approval of the National Institutes of Health awarding component.

Matthew Carnahan
Thomas Hoffman
Eric Jorgenson
Mark Kvale
Pui-Yan Kwok
Yang Li
Neil Risch
Prithvi Sankar
Cathy Schaefer
Hua Tang
Rohit Varma

**SALARY CAP:**

None of the funds in this award shall be used to pay the salary of an individual at a rate in excess of the applicable salary cap. Therefore this award and/or future years are adjusted accordingly, if applicable. Current salary cap levels can be found at the following URL: http://grants1.nih.gov/grants/policy/salcap_summary.htm

**PRIOR APPROVAL:**
Requests which require the prior approval of the NEI must be submitted in writing to the Grants Management Specialist. All requests should reference the complete grant number, 1 R01 EY023557-01, and must be signed by the authorized official of the business office of the grantee organization and by the principal investigator.

**GRANTS MANAGEMENT RESPONSIBLITIES:**
If you need assistance from the National Eye Institute (NEI) during the course of this grant, please contact the grants management and program staff listed on the Notice of Grant Award (NGA). The telephone numbers of these individuals, as well as other extramural staff members of

the NEI, can be located on the NEI web site, http://www.nei.nih.gov. The grants management and program staff members work closely with one another through all phases of the project to facilitate the award and the administration of the grant. Their functions are defined as follows:

GRANTS MANAGEMENT CONTACT: The Grants Management Specialist is responsible for all business management matters associated with the review, negotiation, award, and administration of grants. Grants Management Specialists serve as the focal point for receiving and responding to all questions and correspondence related to business management and policy matters, such as correspondence giving or denying any prior approval required by Public Health Service (PHS) policy or special Terms and Conditions of Award, transfer of the grant to another institution, a change in the period of support, or any action which commits, or may result in committing the NEI to a change in the amount of funding.

PROGRAM CONTACT: The Program Director is responsible for all scientific and technical matters associated with the grant. The program official reviews and monitors scientific progress of the project and provides advice and assistance relative to all technical problems to ensure that the scientific objectives of the research program can be pursued effectively and successfully. All questions or correspondence dealing with research progress, changes in research direction, unique scientific opportunities, or any other scientific needs should be addressed to the Program Director.

**STAFF CONTACTS**

The Grants Management Specialist is responsible for the negotiation, award and administration of this project and for interpretation of Grants Administration policies and provisions. The Program Official is responsible for the scientific, programmatic and technical aspects of this project. These individuals work together in overall project administration. Prior approval requests (signed by an Authorized Organizational Representative) should be submitted in writing to the Grants Management Specialist. Requests may be made via e-mail.

**Grants Management Specialist**: Karen Robinson-smith
**Email**: kyr@nei.nih.gov **Phone**: (301) 451-2020 **Fax**: (301) 496-9997

**Program Official:** Neeraj Agarwal
**Email**: agarwalnee@mail.nih.gov **Phone**: 301-451-2020 **Fax**: 301-402-0528

**SPREADSHEET SUMMARY**
**GRANT NUMBER:** 1R01EY023557-01

**INSTITUTION:** UNIVERSITY OF PENNSYLVANIA

| Budget | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Salaries and Wages | $478,637 | $414,437 | $426,905 | $469,567 | $550,687 |
| Fringe Benefits | $152,206 | $131,790 | $135,755 | $149,322 | $175,117 |
| Equipment | $25,510 | | | | |
| Supplies | $4,973 | $167,752 | $168,565 | $98,293 | $340,092 |
| Travel Costs | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 |
| Patient Care (Outpatient) | $16,115 | $37,500 | $26,500 | $30,000 | $37,159 |
| Other Costs | $23,750 | $23,750 | $23,750 | $23,750 | $23,750 |
| Consortium/Contractual Cost | $1,094,117 | $1,027,745 | $982,219 | $1,007,884 | $443,566 |
| TOTAL FEDERAL DC | $1,803,308 | $1,810,974 | $1,771,694 | $1,786,816 | $1,578,371 |
| TOTAL FEDERAL F&A | $460,540 | $447,437 | $457,785 | $449,359 | $658,588 |
| TOTAL COST | $2,263,848 | $2,258,411 | $2,229,479 | $2,236,175 | $2,236,959 |

| Facilities and Administrative Costs | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| F&A Cost Rate 1 | 60% | 60% | 60% | 60% | 60% |

| | | | | | |
|---|---|---|---|---|---|
| F&A Cost Base 1 | $767,566 | $745,729 | $762,975 | $748,932 | $1,097,646 |
| F&A Costs 1 | $460,540 | $447,437 | $457,785 | $449,359 | $658,588 |

Attachment 3A Research Subaward Agreement

Subaward Number: 563141

## Prime Recipient Contacts

Institution/Organization ("Prime Recipient")

Name: Trustees of the University of Pennsylvania

Address: Office of Research Services
3451 Walnut Street, P-221 Franklin Building
Philadelphia, PA 19104-6205

Administrative Contact

Name: Sheila R. Atkins, Associate Director

Address: Office of Research Services
3451 Walnut Street, P-221 Franklin Building
Philadelphia, PA 19104-6025

Telephone: 215-573-6713 Fax: 215-898-9708

Email: subaward@exchange.upenn.edu

Principal Investigator

Name: JOAN M O'BRIEN

Address: SCHEIE EYE INSTITUTE
51 NORTH 39TH ST
PHILADELPHIA, PA 19104-2689

Telephone: 215-662-8657 Fax:

Email: obrienjo@mail.med.upenn.edu

Financial Contact

Name: BRIAN W DADDINO

Address: SCHEIE EYE INSTITUTE
3535 MARKET ST, STE 701
PHILADELPHIA, PA 19104-3309

Telephone: 215-615-1580 Fax:

Email: daddino@upenn.edu

Authorized Official

Name: Sheila R. Atkins, Associate Director

Address: Office of Research Services
3451 Walnut Street, P-221 Franklin Building
Philadelphia, PA 19104-6205

Telephone: 215-573-6713 Fax: 215-898-9708

Email: subaward@exchange.upenn.edu

# Attachment 3B - Research Subaward Agreement
## Subrecipient Contacts

Subaward Number: 563141

Institution/Organization ("Subrecipient")

Name: UNIVERSITY OF CALIFORNIA - SAN FRANCISCO

Address: Research Management Services
3333 California St, Ste 315
San Francisco, CA 94143-0962

EIN No.: 946036493

Institution Type: Nonprofit with 501C3 Status (Other than Inst. of Higher Ed.)

Is the Performance Site the same as Address above? No

Currently registered in CCR? Yes

Is the Performance Site the same as PI address below? Yes

If no to both questions, please complete 3B page 2 (if ARRA funding use Attachment 4A).

DUNS No.: 094878337

Parent DUNS No.:

Is Subrecipient exempt from reporting compensation? Yes

If no , please complete 3B page 2 (if ARRA funding use Attachment 4A).

Congressional District: CA-012

Congressional District: CA-012

### Administrative Contact

Name: Catherine Chan

Address: Research Management Services
533 Parnassus Avenue, UC HALL 350
San Francisco, CA 94143-0634

Telephone: 415-254-2263

Fax: 415-502-0724

Email: cat.chan@ucsf.edu

### Principal Investigator

Name: Neil Risch, PhD

Address: 513 Parnassus Avenue, S965
San Francisco, CA 94143-0794

Telephone: 415-476-1127

Fax: 415-476-1356

Email: rischn@humgen.ucsf.edu

### Financial Contact

Name: Lori Tin

Address: 513 Parnassus Avenue
San Francisco, CA 94143-0794

Telephone: 415-476-5272

Fax: 415-476-1356

Email: tinl@humgen.ucsf.edu

### Authorized Official

Name: Regnier Jurado

Address: 3333 California Street, 315
San Francisco, CA 94143-0962

Telephone: 415-476-2977

Fax: 415-476-8158

cgawardteam@ucsf.edu

# Attachment 3B - Research Subaward Agreement

## Page 2 - Place of Performance & Highest Compensated Officers

Subaward Number: 563141

Institution/Organization ("Subrecipient")

Name: UNIVERSITY OF CALIFORNIA - SAN FRANCISCO

Place of Performance

Name:

Address:

Telephone:

Fax:

Email:

Congressional District:

The names and total compensation of the five most highly compensated officers of the entity(ies) must be listed if--

(i) the entity in the preceding fiscal year received—

(I) 80 percent or more of its annual gross revenues in Federal awards (federal contracts (and subcontracts), loans, grants (and subgrants) and cooperative agreements); AND

(II) $25,000,000 or more in annual gross revenues from Federal awards; and

(ii) the public does not have access to information about the compensation of the senior executives of the entity through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.

Is subaward entity exempt from reporting executive compensation? Yes If no, complete the information below.

Officer 1 Name

Officer 1 Compensation

Officer 2 Name

Officer 2 Compensation

Officer 3 Name

Officer 3 Compensation

Officer 4 Name

Officer 4 Compensation

Officer 5 Name

Officer 5 Compensation

## ATTACHMENT 4
## SUBAWARD AGREEMENT

**The following *checked* Reporting Requirements apply to this Subaward Agreement:**

- [x] Subrecipient agrees to submit its Final Technical/progress report to the Prime Recipient's Project Director identified in Attachment 3A, sixty (60) days after the end of the Period of Performance.

- [ ] Subrecipient agrees to submit monthly technical/progress reports to Prime Recipient's Project Director identified in Attachment 3A.

- [ ] Subrecipient agrees to submit quarterly technical/progress reports within thirty (30) days from the end of each project quarter to Prime Recipient's Project Director identified in Attachment 3A.

- [x] In accordance with 37 CFR 401.14, Subrecipient agrees to notify Prime Recipient's Administrative Contact identified in Attachment 3A within sixty (60) days after Subrecipient's inventor discloses invention(s) in writing to Subrecipient's personnel responsible for patent matters. Subrecipient will complete DD Form 882 or other Awarding Agency specific form to report invention(s). A negative report may not be required at the end of the Period of Performance depending on the Awarding Agency's General terms and conditions specified in Attachment 2 of this Subaward Agreement.
  DD Form 882 can be located at: *http://www.arl.army.mil/www/pages/218/d882.pdf*

- [ ] (Applicable NASA Grants) The Subrecipient agrees to submit to Prime Recipient's Administrative Contact identified in Attachment 3A, NASA Form 1679 "New Technology Disclosure" for each discovery of new technology individually and at the time of its discovery. For a multi-year Subaward Agreement, Subrecipient agrees to summarize the previous year's disclosures on an annual basis by completing NASA Form C-3043, New Technology Summary Report and marking it interim. The first interim New Technology Summary Report is due exactly twelve (12) months from the effective date of the Subaward Agreement and anniversary thereafter.
  NASA Form 1679 can be located at:
  *https://ntr.ndc.nasa.gov/legacy/docs/nf1679.pdf*

  NASA Form C-3043 can be located at:
  *https://ntr.ndc.nasa.gov/legacy/forms/NASA_NTSR_form.pdf*

- [ ] (Applicable EPA Grants) Subrecipient agrees to submit to Prime Recipient's Administrative Contact identified in Attachment 3A, EPA Form 5700-52A "Minority Business Enterprises/Women-owned Business Enterprises."
  EPA Form 5799-52A can be located at: *http://www.epa.gov/ogd/forms/adobe/5700_52a_sec.pdf*

- [ ] ***Terms & Conditions #3* amended from sixty (60) days to NO LATER THAN forty-five (45) days after subaward end date for the submission of the final statement of cumulative costs incurred.**

**Other Special Reporting Requirements:**

ATTACHMENT 5

**SCOPE OF WORK**

**The UCSF Research Team:**

**Neil Risch, Ph.D. (Principal Investigator)** will manage the scientific direction and administration of the UCSF project and will closely collaborate with University of Pennsylvania, Kaiser and Stanford collaborators on the analysis of the genetic data.

**Pui-Yan Kwok, M.D., Ph.D. (Co-investigator)** will oversee the genotyping and sequencing for this study.

**Thomas Hoffmann, Ph.D. (Faculty Researcher)** will advise on genetic analysis aspects of this study with the University of Pennsylvania, Kaiser and Stanford investigators, as needed. He is currently supported by a K Award.

**Mark Kvale, Ph.D. (Programmer Analyst V)** will perform the genotyping of data from the Affymetrix Gene Titans and oversee QC analyses. He will also assist researchers in data analysis of global aspects of the data set, such as population stratification, identification of related individuals, detection of copy number variants and other data analysis tasks.

**Brandon Zerbe, Ph.D. (Associate Research Specialist)** will assist Dr. Kvale in creating and managing and QC of the genotyping derived from the Affymetrix data.

GWAS samples will be processed as follows:

Year 1 Est 2275 GWAS @ 61/array ($138,775) and lab service ~$30 per sample ($68,250)
Year 2 Est 1750 GWAS @ 61/array ($122,000) and lab service ~$30 per sample ($50,440)
Year 3 2500 EWAS @ $31/array ($77,500) and $30.91/lab service ($77,275)
Year 4 2500 EWAS @ $31/array ($77,500) and $30.91/lab service ($77,275)

Program Director/Principal Investigator (Last, First, Middle): Risch, Neil

| **DETAILED BUDGET FOR INITIAL BUDGET PERIOD DIRECT COSTS ONLY** | FROM | THROUGH |
|---|---|---|
| | 03/01/2014 | 02/28/2015 |

List PERSONNEL *(Applicant organization only)*
Use Cal, Acad, or Summer to Enter Months Devoted to Project
Enter Dollar Amounts Requested *(omit cents)* for Salary Requested and Fringe Benefits

| NAME | ROLE ON PROJECT | Cal. Mnths | Acad. Mnths | Summer Mnths | INST.BASE SALARY | SALARY REQUESTED | FRINGE BENEFITS | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Risch, Neil | PD/PI | 2.4 | | | 179,700 | 35,940 | 4,672 | 40,612 |
| Kwok, Pui-Yan | Co-I | 1.2 | | | 179,700 | 17,970 | 2,696 | 20,666 |
| Hoffman, Thomas | Co-I | 0 | | | | | | |
| Kvale, Mark | Scientific Programmer | 3 | | | 133,033 | 33,258 | 8,315 | 41,573 |
| Zerbe, Brandon | Assoc Specialist | 3 | | | 53,268 | 13,317 | 2,397 | 15,714 |
| | | | | | | | | |
| | | | | | | | | |
| **SUBTOTALS** → | | | | | | 100,485 | 18,080 | 118,565 |

| | |
|---|---|
| CONSULTANT COSTS | |
| EQUIPMENT *(Itemize)* | |
| SUPPLIES *(Itemize by category)*<br>Small equipment items (desktop computer parts)$1997<br>Portable drives for data exchange & storage $1000 | 2,997 |
| TRAVEL | |
| INPATIENT CARE COSTS | |
| OUTPATIENT CARE COSTS | |
| ALTERATIONS AND RENOVATIONS *(Itemize by category)* | |
| OTHER EXPENSES *(Itemize by category)*<br>UCSF Network Charge $374<br>Genomic Arrays $138,775<br>Core Lab Genotyping Services $68,250 | 207,399 |
| CONSORTIUM/CONTRACTUAL COSTS — DIRECT COSTS | |
| **SUBTOTAL DIRECT COSTS FOR INITIAL BUDGET PERIOD** *(Item 7a, Face Page)* | $ 331,961 |
| CONSORTIUM/CONTRACTUAL COSTS — FACILITIES AND ADMINISTRATIVE COSTS | 154,663 |
| **TOTAL DIRECT COSTS FOR INITIAL BUDGET PERIOD** | $ 486,624 |

# EXHIBIT B

University of Pennsylvania
Scheie Eye Instutute
3535 Market Street, Suite 701
Philadelphia, PA 19104-3309
daddino@upenn.edu

UCSF REF: A123633
Subaward No. 563141
PRIME AWARD No. 1-R01-EY-023557-01

Date: January 26, 2015
P.I. Name: Neil Risch, Ph.D.

**Institution Name and Address:**

The Regents of the University of California
Accounting Office-EMF, Box 0897
University of California San Francisco
San Francisco, CA 94143

Invoice #:INV00216453
Performance Period: 03/01/2014 thru 02/28/2015
Period of Invoice: 12/01/2014 thru 12/31/2014

| Budget Categories | FTE % | 03/01/14 thru 02/28/15 Budget | Actual Expenses this Period | Cumulative Expenses to Date | Unexpended Balance |
|---|---|---|---|---|---|
| **A. PERSONNEL EXPENSES (UCSF Personnel Salaries)** | | | | | |
| Principal Investigator - Neil Risch, Ph.D. | 25% | $30,940.00 | $3,781.25 | $22,687.50 | $8,252.50 |
| Co-PI - Pui-Yan Kwok, M.D., Ph.D. | 35% | $17,970.00 | $5,293.75 | $7,335.63 | $10,634.37 |
| CO-PI - Thomas Hoffman, Ph.D. | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| Programmer Analyst V - Mark Kvale, Ph.D. | 25% | $30,258.00 | $2,936.43 | $14,682.15 | $15,575.85 |
| Associate Research Specialist - Brandon Zerbe, Ph.D. | 45% | $13,317.00 | $2,537.10 | $15,222.60 | ($1,905.60) |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | 0% | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | |
| **Total Salaries** | | $92,485.00 | $14,548.53 | $59,927.88 | $32,557.12 |
| **B. FRINGE BENEFITS (43.25%)** | | $21,080.00 | $6,110.19 | $19,379.66 | $1,700.34 |
| **TOTAL PERSONNEL EXPENSE** | | $113,565.00 | $20,658.72 | $79,307.54 | $34,257.46 |
| | | | | | |
| **C. OPERATING EXPENSES** | | | | | |
| **Operating Expenses** | | $260,216.00 | $260,072.44 | $260,072.44 | $143.56 |
| **Data Network Recharge** | | $374.00 | $113.10 | $346.84 | $27.16 |
| **CDSS Recharge** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **GAEL Recharge** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **Postage and Mailing** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **Capital Equipment** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **D. Travel** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **E. Sub Contracts (PHI, CAHC, ISIS)** | | $0.00 | $0.00 | $0.00 | $0.00 |
| **F. Other** | | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | |
| **Indirect Cost is not applied to SubContracts>25,000** | | | | | |
| **TOTAL DIRECT COST** | | $374,155.00 | $280,844.26 | $339,726.82 | $34,428.18 |
| **INDIRECT COSTS @ 58% Direct Cost** | | $112,469.00 | $55,547.69 | $89,699.60 | $22,769.40 |
| **TOTAL EXPENSES - AMOUNT OF INVOICE** | | **$486,624.00** | $336,391.91 | $429,426.42 | $57,197.58 |

I certify that this claim is in all respects true, correct, supportable by available documentation, and in compliance with all terms/conditions, laws, and regulations governing its payment.

Digitally signed by Azeb Sertsu
Date: 2015.01.30 08:00:33 -08'00'

Signature of Authorized Representative Date
Azeb Sertsu for Rick Blair, Director - Contracts & Grants Accounting